# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| DR. TED ISEGHOHI EDWARDS, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> FEDERAL GOVERNMENT OF NIGERIA, ) <br> et al., ) <br> ) <br> Defendants. ) <br> ) | Civil Action No. <br> 18-11133-FDS |

## MEMORANDUM AND ORDER ON DEFENDANTS' MOTIONS TO DISMISS

SAYLOR, J.

This is an action to enforce a judgment of the Federal High Court of Nigeria. Plaintiff Dr. Ted Iseghohi Edwards seeks $318 million in contingency fees that he contends were awarded by the Federal High Court for representing local Nigerian governments in a suit against the federal government of Nigeria. Defendants, a group of eleven Nigerian government entities and officials, have filed two motions to dismiss the complaint. For the following reasons, both motions to dismiss will be granted.

## I. Background

### A. Factual Background

The facts are set forth as alleged in the complaint.

According to the complaint, on June 11, 2013, a consultancy company and 235 local Nigerian governments filed an action in the Federal High Court of Nigeria to recover money

allegedly owed to them by the federal government of Nigeria. (Pl. Ex. 2).[1] Edwards alleges that he provided legal consultation to the local governments in that suit. (Pl. Ex. 3). On December 13, 2013, the Federal High Court issued a judgment in favor of the company and local governments for approximately $3.18 billion. (Pl. Ex. 2).

On July 4, 2015, Edwards filed an action in the Federal High Court against the Incorporated Trustees of Association of Local Governments of Nigeria. (Pl. Ex. 3). Edwards sought to recover a ten percent "contingency fee" he contended he was owed for the legal work he had performed for the local governments as part of their 2013 case. (*Id.*). On October 30, 2015, the Federal High Court issued Edwards a judgment for approximately $3.18 million. (*Id.*). The judgment also provided that Edwards was "entitled to be paid . . . 10% of any recovery made and or of proceeds from any source whatsoever of the [2013] Judgment." (*Id.*).

On November 18, 2015, Edwards brought an action seeking to recover the ten percent ($3.18 million) from the Central Bank of Nigeria. (Pl. Ex. 6). On October 3, 2016, the Federal High Court issued an order directing the Central Bank of Nigeria to pay Edwards that amount. (*Id.*).

On October 28, 2016, Edwards filed an action in the Federal High Court against the Central Bank of Nigeria, the federal government of Nigeria, and nine entities and officials of the federal government. (Pl. Ex. 1). Among other things, the suit sought (1) a declaration that, by virtue of the Federal High Court's 2013 decision, the Central Bank of Nigeria was not to "disburse any sum of money to anyone . . . without first deducting and paying . . . $318 million . . . to Edwards," and (2) "[a]n [o]rder directing the Central Bank of Nigeria to deduct and pay . . . $318 million to Edwards" pursuant to the Federal High Court's 2016 decision. (*Id.*).

---

[1] In addition to the federal government, the action named three federal Nigerian government officials as defendants.

2

On February 16, 2018, the Federal High Court issued an order granting all the relief requested, except as to one defendant, the Economic and Financial Crimes Division, which it held had not been notified of the action. (Pl. Ex. 1a).

B.	**Procedural Background**

On April 17, 2018, Edwards attempted to register the Federal High Court's February 2018 judgment with this Court. (Registration of Foreign Judgment, *Dr. Ted Iseghohi-Edwards v. Fed. Gov't of Nigeria*, No. 18-mc-91146-FDS (D. Mass. Apr. 17, 2018)). Because Edwards did not serve any of the defendants, the case was dismissed without prejudice.

On May 30, 2018, Edwards filed a civil action against the alleged judgment debtors seeks to have the Nigerian judgment recognized by a court in the United States. Instead of serving the defendants, however, Edwards filed a motion for service by the clerk and a motion for summary judgment. The Court denied both motions on June 4, 2018. Edwards then served the eleven defendants on June 7 and June 8.

On August 30, 2018, the Central Bank of Nigeria filed a motion to dismiss the complaint. The other ten defendants filed a motion to dismiss on September 28, 2018. The two motions will be considered together.

II.	**Analysis**

A.	**FSIA Immunity Generally**

All defendants contend that they are entitled to immunity under the Foreign Sovereign Immunities Act ("FSIA"), 28 U.S.C. §§ 1602, *et seq.*

The FSIA is "the sole basis for obtaining jurisdiction over a foreign state in [United States] courts." *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 434 (1989). "Under the FSIA, a foreign state is presumptively immune from the jurisdiction of the United

3

States Courts; unless a specified exception applies, a federal court lacks subject matter jurisdiction over a claim against a foreign state." *Saudi Arabia v. Nelson*, 507 U.S. 349, 355 (1993) (citing *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 488-89 (1983)).

A "foreign state," as used in the FSIA, "includes . . . an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

### 1. **The Institutional Defendants**

At the outset, it is clear that the Federal Government of Nigeria is a foreign state. *See Adler v. Federal Republic of Nigeria*, 107 F.3d 720, 723 (9th Cir. 1997). Three other defendants—the Nigeria Police Force, the State Security Services, and the Economic and Financial Crimes Commission—are law-enforcement agencies that perform core government functions. Accordingly, the Court has no difficulty concluding that each of them constitutes a "foreign state" under the FSIA.

It is also clear that the Central Bank is an "instrumentality" of Nigeria. Indeed, Edwards does not contest that the Central Bank is an instrumentality for purposes of the FSIA; in fact, the complaint cites to § 1603(b) and refers to all of the defendants, including the Central Bank, as "sovereign states within the definition and context of the [FSIA]." (Compl., Docket No. 1, § II(A)(2)).[2] Other courts have also concluded that the Central Bank is an "instrumentality" of Nigeria. *See, e.g., Adler*, 107 F.3d at 723 ("the Central Bank of Nigeria . . . [is an]

---

[2] In his opposition to Central Bank's motion to dismiss, Edwards contends for the first time that the Central Bank has waived "any immunity it may have had" under the FSIA by "consent[ing]" to the orders of the Nigerian Federal High Court. (Opp. at 10). The Central Bank has filed an affidavit of its Deputy Director that states the Bank "has not waived its sovereign immunity rights with respect to this matter." (Affidavit of Effiong Jack Uikitetu at 1). Although it is true under 28 U.S.C. § 1605(a)(1) that a foreign state may be deemed to have waived its sovereign immunity by "implication," any implication need arise from "evidence" that a foreign state "inten[ds] to waive sovereign immunity in United States courts." *SI Group Consort Ltd. V. Ukraine, Ivano-Frankivsk State Admin*, 2017 WL 398400, at *2 (S.D.N.Y. Jan. 30, 2017) (quoting *Capital Ventures Int'l v. Argentina*, 552 F.3d 289, 295 (2d Cir. 2009)). Edwards likewise contends that the other defendants have waived their sovereign immunity. However, he has provided no evidence that the Central Bank, or any other entity, ever intended to waive its sovereign immunity in the United States as to this matter. The claim of waiver will therefore be rejected.

instrumentalit[y] of the Federal Republic of Nigeria."); *Verlinden B.V. v. Central Bank of Nigeria*, 647 F.2d 320, 322, n.4 (2d Cir. 1981) ("[t]he Central Bank of Nigeria is an instrumentality of the Federal Republic of Nigeria. It performs functions similar to the United States Federal Reserve and the Bank of England."), *vacated on other grounds*, 461 U.S. 480 (1983).

### 2. **The Individual Defendants**

The six other defendants—the Attorney General of the Federation, the Accountant General of the Federation, the Minister of Finance, the Secretary to the Government of the Federation, the Inspector General of Police, and the Director General of State Security Services—are high-ranking officials of the Nigerian federal government.

"[T]o determine whether a suit against a foreign official is governed by the FSIA," a court "must look to whether the suit is against the official personally or whether the state is 'the real party in interest.' If the suit is against the official personally, then the common law regarding sovereign immunity applies, but if the state is 'the real party in interest,' then the suit should be treated as an action against the foreign state itself to which the FSIA would apply." *Odhiambo v. Republic of Kenya*, 930 F. Supp. 2d 17, 34 (D.D.C. Mar. 13, 2013) (quoting *Samantar v. Yousuf*, 560 U.S. 305, 324 (2010)).

The suit here is essentially against the Nigerian government, not the officials personally. Indeed, the complaint identifies the officials only by their official titles and does not anywhere mention their names. Furthermore, the complaint refers to each defendant as a "sovereign state." Finally, the complaint states that the underlying action in Nigerian court was brought to "secur[e] refunds from the Federal Government of Nigeria . . ." and that the debts sought were "owed by the Federal Government." (Compl., Docket No. 1, at § III). Accordingly, the "real party in

5

interest" is plainly the foreign state of Nigeria, and the FSIA applies to the officials named as defendants.

Accordingly, the Court concludes that all defendants constitute a "foreign state" within the meaning of the FSIA.

### B.     Exceptions to the FSIA

The next question is whether any statutory exception to the FSIA applies. Edwards invokes three of the exceptions under 28 U.S.C. § 1605(a).

#### 1.     The "Commercial Activity" Exception

Edwards first invokes the FSIA's "commercial activity" exception, 28 U.S.C. § 1605(a)(2).

##### a.     The Central Bank

Under the first clause of § 1605(a)(2), a foreign state may lose immunity for "commercial activity carried on in the United States." Similarly, under the second clause of §1605(a)(2), a foreign state may lose immunity for an "act performed in the United States in connection with a commercial activity of the foreign state elsewhere." Edwards makes no allegation that *any* acts—commercial or otherwise—were performed by the Central Bank in the United States. Without evidence of such acts, the first two clauses cannot apply.

The third clause of § 1605(a)(2) abrogates immunity for acts a foreign state performed "outside" the United States, "in connection with a commercial activity of [a] foreign state elsewhere," that "cause[d] a direct effect" in the United States.

Edwards contends that the Central Bank's failure to pay his legal fees had the direct effect of denying him "taxable income," which in turn prevented the Internal Revenue Service from collecting "approximately fifty (50) million dollars in tax revenue for the United States

Government." (Compl., Docket No. 1, at § IV(2)). However, courts have consistently held that "[a] financial loss in the United States, when all the acts giving rise to the claim occurred outside this country, is insufficient to show the 'direct effect' in the United States that FSIA requires." *BPA Int'l, Inc. v. Sweden*, 281 F. Supp. 2d 73, 81 (D.D.C. Sept. 5, 2003). In other words, "the fact that an American individual or firm suffers some financial loss from a foreign tort," does not, "standing alone, suffice to trigger the exception" provided by the third clause of § 1605(a)(2). *Antares Aircraft, L.P. v. Federal Republic of Nigeria*, 999 F.2d 33, 36 (2d Cir. 1993).

Accordingly, Edwards has not shown that any activity conducted by the Central Bank caused a direct effect in the United States, and thus the third clause of § 1605(a)(2) does not apply.

### b. Other Defendants

As to the remaining defendants, Edwards relies only on the third clause of § 1605(a)(2). As with his claims against the Central Bank, Edwards contends that his lost income —and the IRS' corresponding lost tax revenue— constitutes a "direct effect" in the United States. However, as stated above, "[a] financial loss in the United States . . . is insufficient to show [a] 'direct effect' in the United States . . . ." *BPA Int'l, Inc.*, 281 F. Supp. at 81.

Edwards also urges the Court to rely on principles of equity to conclude that the commercial activity exception applies. In support, he cites to the Supreme Court's opinion in *First Nat. City Bank v. Banco Para El Comercio Exterior de Cuba*, 462 U.S. 611 (1983). In that case, the Court relied upon principles of equity to allow a private American bank to assert a counterclaim against a foreign sovereign who had brought suit against it in a United States court. *Id.* at 630. Here, however, none of the defendants here have brought any claims against

Edwards, and there is no other basis to suggest, much less conclude, that principles of equity should override the clear requirement of the statute.

Accordingly, the Court concludes that the commercial-activity exception to the FSIA, 28 U.S.C. § 1605(a)(2) does not apply.

### 2. The "Taking" Exception

Edwards further alleges that the FSIA's "taking" exception, 28 U.S.C. § 1605(a)(3), applies. That section provides that a foreign state is not immune in any case

> in which rights in property taken in violation of international law are in issue and that property or any property exchanged for such property is present in the United States in connection with a commercial activity carried on in the United States by the foreign state; or that property or any property exchanged for such property is owned or operated by an agency or instrumentality of the foreign state and that agency or instrumentality is engaged in a commercial activity in the United States.

*Id.*

Edwards contends that the Central Bank's failure to pay his legal fees "translates to an illegal conversion . . . [and a] taking . . . in violation of International law because the Central Bank of Nigeria has liquid assets in various banks within the jurisdiction of this court [and] engages in commercial transactions with other banks and institutions within the jurisdiction of this court." (Opp. at 16).

Edwards has provided no authority to support his contention that the Central Bank's actions constitute a taking in violation of international law. Nor has he established that the other requirements of the statute apply. He has made no contention that the property allegedly taken from him (or any property exchanged for that property) is "present in the United States," nor has he contended that such property is "owned or operated" by an "agency or instrumentality" of a foreign state "engaged in a commercial activity in the United States."

8

Accordingly—and with the additional understanding that a United States court is "forbid[den]" from "examin[ing] . . . 'taking[s] by a foreign sovereign of property within its own territory" under the "act of state doctrine"—the "taking exception" to the FSIA clearly does not apply to the Central Bank. *Villoldo v. Castro Ruz*, 113 F. Supp. 3d 435, 438-39 (D. Mass. July 7, 2015) (quoting *Republic of Iraq v. First Nat. City Bank*, 353 F.2d 47, 51 (2d Cir. 1965)).

As to the remaining defendants, Edwards cites to the "taking" exception only in the complaint and not in his opposition to their motion to dismiss. In any event, the argument fails as to those defendants for the same reasons. Putting aside the question of whether the defendants committed a taking in violation of international law, Edwards has provided no evidence that the property allegedly taken from him (or any property exchanged for that property) is "present in the United States," as required by § 1605(a)(3).

Accordingly, the Court concludes that the "taking" exception to FSIA, 28 U.S.C. § 1605(a)(3), does not apply.

### 3. The "Tortious Activity" Exception

Finally, Edwards seeks to apply the "tortious activity" exception under 28 U.S.C. § 1605(a)(5). That section provides an exception to immunity for instances where "money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment." *Id.*

"The tortious activity exception contained in § 1605(a)(5) applies only when [the] alleged injury *and* the foreign state's tortious conduct occurred within the United States." *In re Chinese-Manufactured Drywall Products Liability Litigation*, 168 F. Supp. 3d 918, 934 (E.D. La. Mar.

10, 2016) (citing *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 439-41 (1989)). Even if the withholding of Edwards' fees was tortious—a question the Court does not answer here—any such conduct occurred in Nigeria, not the United States. Accordingly, the tortious-activity exception, 28 U.S.C. § 1605(a)(5), does not apply.

In short, all defendants are immune from suit under the FSIA. Accordingly, their motions to dismiss will be granted.

## III. Conclusion

For the foregoing reasons,

1. The motion to dismiss of the Central Bank of Nigeria is GRANTED.

2. The motion to dismiss of the Federal Government of Nigeria; the Attorney General of the Federation; the Accountant General of the Federation; the Minister of Finance; the Secretary to the Government of the Federation; the Inspector General of Police; the Nigeria Police Force; the Director General of State Security Services; the State Security Services; and the Economic and Financial Crimes Commission is GRANTED.

**So Ordered.**

/s/ F. Dennis Saylor
F. Dennis Saylor, IV
Dated: December 18, 2018   United States District Judge